**KAYE, ROSE & PARTNERS, LLP**
Bradley M. Rose, Esq. (126281)
Frank C. Brucculeri, Esq. (137199)
André M. Picciurro, Esq. (239132)
Daniel F. Berberich, Esq. (215946)
9100 Wilshire Blvd. Suite 420W
Beverly Hills, California  90212
Telephone: (310) 551-6555
Facsimile: (310) 277-1220
brose@kayerose.com
fbrucculeri@kayerose.com
apicciurro@kayerose.com
dberberich@kayerose.com

Attorneys for Plaintiff
HASTAY MARINE LTD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASTAY MARINE LTD,<br><br>Plaintiff,<br><br>v.<br><br>HANJIN SHIPPING CO., LTD.,<br><br>Defendant. | Case No.: 2:16-cv-06541<br><br>**IN ADMIRALTY**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR: (1) ISSUANCE OF PROCESS FOR MARITIME ATTACHMENT AND GARNISHMENT PURSUANT TO SUPPLEMENTAL ADMIRLTY RULE B; AND (2) RIGHT TO ATTACH ORDER AND PRE-JUDGMENT WRIT OF ATTACHMENT** |

Plaintiff HASTAY MARINE LTD (hereinafter "Plaintiff" or "HASTAY"), files this application for: (1) issuance of process for maritime attachment and garnishment pursuant to Supplemental Admiralty Rule B; and (2) a right to attach order and pre-judgment writ of attachment against the assets of Defendant HANJIN  SHIPPING CO., LTD., (hereinafter "Defendant" or "HANJIN"), by *ex parte* application and appearance, and hereby submits the following Memorandum of Points and Authorities in support of its application

Kaye, Rose & Partners LLP

for a right to attach order and writ of attachment.

## I.    SUMMARY OF THE CASE AND RELIEF SOUGHT

Defendant HANJIN is the time-charterer of a container ship, HANJIN NEW JERSEY ("the Vessel"), from Plaintiff HASTAY.  Pursuant to the Time Charter, the daily hire rate of US$23,890 is due and payable by HANJIN 15 days in advance.  As of date of filing this *ex parte* application, HANJIN is delinquent in the amount of $1,380,375 for charter hire and related expenses owed. HASTAY expects to obtain a judgment for the amount of charter hire and related expenses owed in clear breach of the Time Charter and by this application seeks pre-judgment security through either attachment of HANJIN's assets within this jurisdiction to satisfy, in whole or in part, the anticipated judgment in HASTAY's favor.   Accordingly, HASTAY applies pursuant to Supplemental Admiralty Rule B, and Fed. R. Civ. P. 64 and California Code of Civil Procedure section 485.210(a) for or a right to attach order and writ of attachment of all corporate property of HANJIN within this jurisdiction which is subject to attachment as more fully set forth herein.

## II.    STATEMENT OF FACTS

On or about May 16, 2011, Zodiac Maritime Agencies Ltd ("Zodiac") (on behalf of a nominee to be advised) as Owners and HANJIN as Charterers entered into an agreement to charter a vessel "TBN Hull S4029" (now named M/V "HANJIN NEW JERSEY") ("Time Charter").  On June 28, 2013, HASTAY was nominated as Owners by Zodiac.   (See, Declaration of Adam Nicholas Emilianou, (hereinafter "Emilianou Decl."), ¶ 2 and **Exhibit 1** thereto.)  Pursuant to Clauses 4 and 5 of the Time Charter, the daily hire rate of US$23,890 is due and payable 15 days in advance.  (Emilianou Decl., ¶ 3.)

On June 22, 2016, HASTAY gave HANJIN notice that, in breach of the Time Charter, HANJIN had failed to pay when due on June 22, 2016 (at 02:00 hours) the hire payment for the period June 22 to July 7, 2016 in the total sum of

MEMORANDUM OF Ps & As ISO *EX PARTE*
APPLICATION FOR RIGHT TO ATTACH

Kaye, Rose & Partners LLP

US$360,075 which includes $358,350 in hire and $1,725 in related expenses (hereinafter collectively referred to as "hire"). HASTAY demanded immediate payment. (Emilianou Decl., ¶ 4 and **Exhibit 2** thereto.) After not receiving any payment in response to its June 22, 2016 demand to HANJIN (**Exhibit 2**), HASTAY demanded payment again on June 29, 2016 of the US$360,075 past due. HASTAY demanded payment by June 30, 2016. (Emilianou Decl., ¶ 5 and **Exhibit 3** thereto; see also, Declaration of Koh See Bin (hereinafter "Koh Decl."), ¶ 2 and **Exhibit 3** thereto.)

A second hire installment fell due on July 7, 2016 (at 02:00 hours) for the period July 7 to July 22, 2016. After not receiving any payment in response to its June 22 and June 29, 2016 demands as well as payment in respect of the said further installment of hire, on July 7, 2016, HASTAY again demanded HANJIN make payment of US$360,075 for past-due hire payment covering the period June 22 through July 7, 2016 and also demanded payment of an additional US$360,075 for past due hire for the period July 7 to July 22, 2016, bringing the total amount owed to $720,150. (Emilianou Decl., ¶ 6 and **Exhibit 4** thereto; see also, Koh Decl., ¶ 3 and **Exhibit 4** thereto.)

On July 11, 2016, HASTAY agreed, without prejudice to its rights to take any action necessary to protect its interests, to forego arresting another asset of HANJIN, the vessel "Keoyang Noble", in consideration for HANJIN's undertaking to provide, by July 31, 2016: (a) payment for the operating expenses of HANJIN NEW JERSEY for the period June 22 through August 6, 2016 (at US$7,000 per day); and (b) provide a letter of support from HANJIN's largest bank lender, Korea Development Bank ("KDB") (hereinafter "Undertaking"). (Emilianou Decl., ¶ 7 and **Exhibit 5** thereto.)

On July 22, 2016 (at 02:00 hours), pursuant to the Charter Party (**Exhibit 1**) a third hire installment fell due, bringing the total charter hire outstanding to the sum of $1,080,225 (for the period June 22 through August 6, 2016).

Kaye, Rose & Partners LLP

Kaye, Rose & Partners LLP

(Emilianou Decl., ¶ 8.)   On July 29, 2016, HANJIN made payment of US$322,000 for payment of operating expenses, but did not produce a letter of support from KDB as to HANJIN's plans for financial restructuring by July 31, 2016, in breach of the Undertaking dated July 11, 2016.  (HASTAY did not receive a letter of support from KDB until August 9, 2016.)  Further, despite various demands, HANJIN failed to provide confirmation, by the stipulated deadline of July 29, 2016, that the outstanding hire would be paid on or before August 3, 2016.  (Emilianou Decl., ¶ 9 and **Exhibit 6** thereto.)  As of August 1, 2016, the balance charter hire outstanding (less the operating expenses paid by HANJIN of $322,000) is $758,225.  As of August 1, 2016, the balance charter hire outstanding (less the operating expenses paid by HANJIN of $322,000) is $758,225.  As of August 6, 2016 (at 02:00 hours), a fourth hire installment fell due for the period August 6 through August 21, 2016, bringing the total amount of charter hire due to the figure of $1,118,300. On August 8, 2016, HASTAY demanded payment of the outstanding hire of $1,118,300 within four banking days. HANJIN subsequently made payment for operating expenses in the amount of $98,000, leaving a balance amount of $1,020,300 due and owing to HASTAY. (Emilianou Decl., ¶ 9 and **Exhibit 7** thereto.)

On August 21, 2016, a fifth hire installment fell due for the period August 21 to September 5, leaving a balance of $1,380,375 due and owing to HASTAY. On August 22, 2016, HASTAY demanded payment of the outstanding hire of $1,380,375 within 4 banking days.  (Emilianou Decl., ¶ 9 and **Exhibit 8** thereto.)

Via Eastern Pacific Shipping, acting in its capacity as HASTAY's Vessel Manager and authorized representative, HASTAY retained Gray Page, a well known and well respected international maritime consulting group providing investigative and other targeted services to clients in the international shipping trade, to investigate the existence of assets owned by HANJIN to support an anticipated judgment against HANJIN for breach of the Time Charter.

4

According to Gray Page's investigation and declaration filed contemporaneously herewith, HANJIN has, or will have, assets, accounts, freights, monies, charter hire, credits, effects, bunkers, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to, claimed by, or for the benefit of HANJIN within this District held by HANJIN or various other parties, as garnishees. (Emilianou Decl., ¶ 10; see also, Declaration of James Walter of Gray Page (hereinafter "Walters Decl."), ¶¶ 5-6 and **Exhibits 1** and **2** thereto.)

## III.   POINTS AND AUTHORITIES

### A.   Issuance of Process Pursuant to Supplemental Admiralty Rule B

Rule B of the Supplemental Rules of Admiralty and Maritime Claims governs the procedure by which a party may attach another party's assets.  Rule B provides, in relevant part:

(a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

(b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

(c) If the plaintiff or the plaintiff's attorney certifies that exigent circumstances make court review impracticable, the clerk must issue

Kaye, Rose & Partners LLP

5

1   the summons and process of attachment and garnishment.

2   Courts in this Circuit have recognized that the procedure authorized under

3   Supplemental Rule B has a dual purpose: (i) to assure a defendant's appearance;

4   and (ii) to assure satisfaction in case the suit is successful.  *Polar Shipping, Ltd.*

5   *v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982). Maritime

6   attachments have found favor in the courts because of the widely recognized fact

7   it is frequently more difficult to find property of parties to a maritime dispute

8   than of parties to a traditional civil action. Applying this rationale, the Ninth

9   Circuit has stated as follows:

10      A ship may be here today and gone tomorrow, not to return for an

11      indefinite period, perhaps never. Assets of its owner, including debts

12      for freights, as in this case, within the jurisdiction today, may be

13      transferred elsewhere or paid off tomorrow. It is for these reasons

14      that maritime actions *in rem*, libelling a ship or other assets of a

15      defendant, Supplemental Rule C, or attachment in actions *in*

16      *personam*, Supplemental Rule B, were developed. These reasons are

17      as valid today as they ever were.

18   *See Polar Shipping,* 680 F.2d at 637 (9th Cir. 1982); *see also Fla. Conf. Ass'n of*

19   *Seventh-Day Adventists v. Kyriakides*, 151 F. Supp. 2d 1223, 1229 (C.D. Cal.

20   2001)("The primary concern driving the creation of the right of attachment and

21   garnishment was the transitory nature of maritime commerce…"). Thus, the

22   policy underlying maritime attachment "has been to permit the attachment of

23   assets wherever they can be found…" *Aqua Stoli Shipping, Ltd. v. Gardner Smith*

24   *Pty Ltd.,* 460 F.3d 434, 443 (2d. Cir. 2006). "This policy has been implemented

25   by a relatively broad maritime attachment rule, under which the attachment is

26   quite easily obtained."[1]

27

28   [1] While Plaintiff recognizes that cases from the Second Circuit are not binding
authority upon this Court, Plaintiff nonetheless submits that decisions from the

*Kaye, Rose & Partners LLP*

6

Although the phrase "not found within the district" is not defined by the Rule B (its Advisory Committee's notes to the 1966 adoption states: "The subject seems one best left for the time being to development on a case by case basis,")  the Second Circuit developed a two-pronged inquiry, called "the *Seawind* Test" which  looks first to "whether [d]efendant[ ] can be found within the district in terms of jurisdiction, and second, if so, whether [it] can be found for service of process." *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 131 (2d Cir. 2009)(*per curiam*), quoting *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir.1963)(holding an order of attachment should not issue against a defendant that is found in the district in *both* senses.  *Seawind*, 320 F.2d 580.

Here, the Verified Complaint filed concurrently herewith, in addition to the declarations filed concurrently herewith, including the Declaration of André M. Picciurro as to the defendant not being found within this District, at a minimum, for purposes of service of process, satisfies the requirements of Rule B.  Additionally, the Declaration of Adam Nicholas Emilianou (and in particular, paragraph 15) sets forth the exigent circumstances requiring *ex parte* relief since notice of this motion, and the time it would take for a properly noticed motion, could likely result in movement of assets out of this jurisdiction, intentionally or otherwise.   Accordingly, HASTAY respectfully requests that this Court now issue its Order to the Clerk for the issuance of the Supplemental Rule B writs as

Second Circuit and the Southern District of New York are uniquely persuasive in view of the sheer volume of maritime attachment and arrest cases heard by those courts. As the Second Circuit Court of Appeals noted in *The Shipping Corporation of India v. Jaldhi Overseas Pte. Ltd.*, "from October 1, 2008 to January 31, 2009 alone, maritime plaintiffs filed 962 lawsuits seeking to attach a total of $1.35 billion. These lawsuits constituted 33% of all lawsuits filed in the Southern District." 585 F.3d 58, 62 (2d Cir. 2009). *See also Flame S.A. v. M/V LYNX*, E.D. Tex. Docket No. 10 Civ. 278 (RC) (E.D. Tex. June 22, 2010) ("The Southern District of New York is home to one of the largest ports in the world. Its courts are well versed in admiralty matters, so these decisions are persuasive.")

MEMORANDUM OF Ps & As ISO *EX PARTE*
APPLICATION FOR RIGHT TO ATTACH

Kaye, Rose & Partners LLP

requested, and herewith files a proposed Order.

### B.      Right to Attach under State Law

Additionally, a plaintiff in federal court may use governing state law remedies for the seizure of property to satisfy a judgment. *Ionian Corp. v. Country Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 28544, at 20 (D. Or. 2012). In order to access said remedies, a plaintiff may utilize Rule 64 of the Federal Rules of Civil Procedure, which reads as follows:

Principles of Attachment Law

Rule 64. of the Federal Rules of Civil Procedure - Seizing a Person or Property

(a) Remedies Under State Law—In General. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

(b) Specific Kinds of Remedies. The remedies available under this rule include the following—however designated and regardless of whether state procedure requires an independent action:

• arrest;

• attachment;

• garnishment;

• replevin;

• sequestration; and

• other corresponding or equivalent remedies.

Fed. R. Civ. P. Rule 64.

In the case at bar, Plaintiff seeks an *ex parte* right to attach order, and a pre-judgment writ of attachment of Defendant's corporate assets. No federal statute applies to pretrial attachment of assets sought by Plaintiff in this case.

MEMORANDUM OF Ps & As ISO *EX PARTE*
APPLICATION FOR RIGHT TO ATTACH

Kaye, Rose & Partners LLP

Accordingly, under Fed. R. Civ. P. Rule 64, the proper attachment procedure is governed by California Law.

### C.   An *Ex Parte* Order and Writ Should Issue Under California Law

Under California Code of Civil Procedure section 485.210 (a), a plaintiff may apply *ex parte* for a right to attach order and writ of attachment at the time of filing of the complaint or any time thereafter. Under Section 485.210 (b), such an application must: (1) meet requirements under section 484.020 for a noticed order and writ of attachment, and (2) demonstrate irreparable injury within the meaning of section 485.010 (b). Finally, section 485.210 (c) requires that an *ex parte* application include a supporting affidavit, or a declaration in lieu of affidavit as authorized by California Code of Civil Procedure Section 2015(5). As set forth in section 484.020, any application for a pre-judgment writ of attachment must be executed under oath and contain the following elements:

(a) A statement showing that the attachment is sought to secure the recovery on a claim upon which an attachment may be issued.

(b) A statement of the amount to be secured by the attachment.

(c) A statement that the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.

(d) A statement that the applicant has no information or belief that the claim is discharged in a proceeding under Title 11 of the United States Code (Bankruptcy) or that the prosecution of the action is stayed in a proceeding under Title 11 of the United States Code (Bankruptcy).

(e) A description of the property to be attached under the writ of attachment and a statement that the plaintiff is informed and believes that such property is subject to attachment. Where the defendant is a corporation, a reference to "all corporate property

9

which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010" satisfies the requirements of this subdivision. Where the defendant is a partnership or other unincorporated association, a reference to "all property of the partnership or other unincorporated association which is subject to attachment pursuant to subdivision (b) of Code of Civil Procedure Section 487.010" satisfies the requirements of this subdivision.

California Code of Civ. Pro. § 484.020

It is well established under California law that a writ of attachment may issue on a claim alleging breach of an express contract. *Flagg v. Dare*, 107 Cal. 482 (Cal. 1985). In the present case, Plaintiff is seeking a writ of attachment for the sole purpose of recovering on an express Time Charter contract entered into between Plaintiff and Defendant. Plaintiff seeks to secure the unsecured sum of US$1,380,375 to be awarded if Plaintiff prevails in this action.  (Emilianou Decl., ¶¶ 9 and 13.)

Plaintiff has no information or belief that this claim has been discharged or stayed under Chapter 11 bankruptcy proceedings.  (Emilianou Decl., ¶ 14.) Plaintiff seeks to attach all corporate property which is subject to attachment pursuant to subdivision (a) of California Code of Civil Procedure Section 487.010, which includes but is not limited to, the assets identified by Gray Page. (Emilianou Decl., ¶ 10, and Walters Decl.)  An *ex parte* writ of attachment is properly issued where there is a showing of great or irreparable injury. *Western Steel and Ship Repair, Inc.*, 222 Cal.Rptr. 556,561; 176 Cal.App.3d 1108 (Cal.App. 4 Dist., 1986).   Under section 485.010 (b), "great or irreparable injury" may be shown by any of the following:

(1) Under the circumstances of the case, it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made

Kaye, Rose & Partners LLP

MEMORANDUM OF Ps & As ISO *EX PARTE*
APPLICATION FOR RIGHT TO ATTACH

unavailable to levy if issuance of the order were delayed until the matter could be heard on notice….

(5) Any other circumstance showing that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice.

California Code of Civ. Pro. § 485.010 (b).

An attachment under Section 485.010(b)(1) and (5) is warranted given the circumstances of the case. Defendant HANJIN is a maritime enterprise in the business of shipping cargoes on vessels worldwide. By definition, they are peripatetic, and if the remedy that will require them to provide security is not granted, Plaintiff will be put in a position of being required to scour the globe to find assets against which to enforce the anticipated judgment. See *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 111 (2d Cir. 2009); See also *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 443 (2d Cir. 2006); *Flame S.A. v. Pasha Fin., Inc.*, 2010 U.S. Dist. LEXIS 146110, 2010 WL 2902774, at 1 (C.D. Cal. 2010) (citing *Stoli, supra*); *Trans-Asiatic Oil, Ltd. S.A. v. Apex Oil Co.*, 743 F.2d 956, at 960 (1st Cir. 1984)

As *Western Steel* notes, under the circumstances of the case, it may be inferred that the property sought to be attached is certain to be made unavailable to levy if issuance of the order was delayed. 222 Cal.Rptr. 556, 558.  Because it is in the nature of Defendant's business to move ships and cargo from port to port to load and discharge and transport, it is by no means certain that the asset or other vessel of HANJIN will be back in the jurisdiction for the judgment to be enforced.

This is not to say that there is a sinister motive on the part of the Defendant to evade payment of the eventual judgment, which actuates the movement of the assets out of the jurisdiction. It is simply the nature of Defendant's business to operate mobile assets, and if the matter was to be heard

Kaye, Rose & Partners LLP

11

MEMORANDUM OF Ps & As ISO *EX PARTE*
APPLICATION FOR RIGHT TO ATTACH

on notice, by the time the hearing is scheduled, the Defendant's property is likely to sail out of the jurisdiction, and with it Plaintiff's chance to obtain security for its claim.  The foregoing information supplies the necessary inference that, if issuance of a writ is delayed until this matter can be heard on notice, there is a danger that Defendant's assets will be unavailable, possibly causing irreparable injury to Plaintiff.

**IV.   PRAYER**

FOR THE FOREGOING, and what may be added at an oral hearing of these matters, Plaintiff respectfully requests the Court to issue the following:

1.   An *ex parte* Order Issuing Process of Attachment and Garnishment pursuant to Supplemental Admiralty Rule B;

2.   An *ex parte* right to attach order under the California Code of Civil Procedure section 485.210;

3.   An *ex parte* writ of attachment under California Code of Civil Procedure section 485.210 as to all corporate property which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010, and

4.   Such other relief as this court may consider just, equitable and proper.

Respectfully submitted,

Dated: August 31, 2016          **KAYE, ROSE & PARTNERS, LLP**


By:   /s/Frank C. Brucculeri
     Bradley M. Rose
     Frank C. Brucculeri
     André M. Picciurro
     Daniel F. Berberich
     Attorneys for Plaintiff
     HASTAY MARINE LTD

MEMORANDUM OF Ps & As ISO *EX PARTE* APPLICATION FOR RIGHT TO ATTACH